UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER TEDI EDWARDS, CDCR #BZ-1566,<br><br>       Plaintiff,<br><br>v.<br><br>CHULA VISTA POLICE DEPARTMENT, et al.,<br><br>       Defendants. | Case No.: 25-cv-03825-AJB-DDL<br><br>**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND SCREENING PRO SE § 1983 COMPLAINT**<br><br>(Doc. Nos. 1–2) |

Plaintiff Roger Tedi Edwards is a Kern Valley State Prison prisoner proceeding *pro se*—without an attorney. Edwards has filed a civil rights Complaint under 42 U.S.C. § 1983, along with a motion to proceed *in forma pauperis* ("IFP"). (Doc. Nos. 1–2.)

As explained below, the Court **GRANTS** Edwards' IFP motion and **SCREENS** his Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A(b). The Court finds that Edwards adequately alleges an excessive force claim against Defendants Lowell Moreno and Michael Menna in Count One. But the Court finds that he (1) fails to state any plausible claim for relief against the Chula Vista Police Department, and (2) fails to state any plausible claim in Counts Two and Three. The Court, therefore, **ORDERS** Edwards to either file an Amended Complaint that addresses the pleading deficiencies discussed below, or a Notice of Intent to Proceed with only the excessive force claims alleged in Count One of his current Complaint against Defendants Moreno and Menna.

1

## I.  Motion to Proceed IFP

Generally, anyone initiating a civil action in a U.S. district court must pay a $405 filing fee, which includes a $350 statutory fee and a $55 administrative fee (although anyone granted IFP status is excused from paying the administrative fee). *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)). If a plaintiff fails to prepay the entire fee, the lawsuit will not go forward unless the plaintiff's IFP motion is granted under 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

A prisoner filing an IFP motion must submit a "certified copy of the trust fund account statement (or institutional equivalent)," which must cover "the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).

Even if the court grants IFP status, the prisoner must pay the statutory filing fee. Payments, however, are determined based on the prisoner's available resources. The method for determination is as follows. First, courts calculate an initial filing fee payment. This initial fee is twenty percent of the larger of two amounts: either the average monthly deposits in the trust fund account over the past six months, or the average monthly balance in the account for the past six months. *See* 28 U.S.C. § 1915(b)(1), (4); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016). Nevertheless, if a prisoner plaintiff has insufficient assets, no initial filing fee is required. Second, once the IFP motion is granted and the initial fee is charged, the remaining balance must be paid in installments. 28 U.S.C. § 1915(b)(1)–(2); *Bruce*, 577 U.S. at 84.

Edwards' IFP motion includes a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official. (Doc. No. 2 at 5–7.) His average monthly balance, average monthly deposits, and available balance are all $0.00. (*Id.*)

The Court therefore **GRANTS** Edwards' IFP motion. No initial partial fee will be charged since it appears Edwards presently has no means to pay. *See* 28 U.S.C.

25-cv-03825-AJB-DDL

§ 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action" simply because "the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Edwards is nevertheless required to pay the full $350 filing fee in installments as 28 U.S.C. § 1915(b)(2) calls for.[1]

**II.    Screening Pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

**A.    Standard of Review**

Because Edwards is a prisoner proceeding IFP, federal law requires pre-screening of Edwards' claims before any defendants are required to file an answer. 28 U.S.C. §§ 1915(e)(2), 1915A(b). Pre-screening means that the Court must dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (*en banc*) (28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (28 U.S.C. § 1915A(b)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted). Likewise, § 1915A screening "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)." *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).

---

[1]    The Court notes that Edwards was granted IFP status in another civil rights action he filed on October 14, 2025. *See Edwards v. Montes-Espinosa, et al.*, No. 25-cv-02813-TWR-GC, (S.D. Cal. Nov. 23, 2025), Doc. No. 3 (order granting IFP status and dismissing complaint without prejudice). Since Edwards' October 2025 complaint is against the San Diego Sheriff's Office and several of its personnel based on an unrelated arrest on December 22, 2023, this present matter, against the CVPD and two of its personnel, is not duplicative.

Rule 12(b)(6) requires that a complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001) (citing 42 U.S.C. § 1983). The statute, though "not itself a source of substantive rights, . . . provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation and internal quotation marks omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011).

Complaints filed *pro se* must be "liberally construed, particularly where civil rights claims are involved." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citations omitted).

### B.    Allegations in the Complaint

Edwards names three defendants: the Chula Vista Police Department ("CVPD"), CVPD Officer Lowell Moreno, and CVPD Detective Michael Menna. He raises three causes of action, *i.e.*, counts. Counts One and Two allege that Defendants Moreno and Menna violated Edwards' constitutional rights after the two men arrested Edwards on December 31, 2023. (Doc. No. 1 at 1–2.) Count Three alleges the CVPD and Menna violated his right to a fair and impartial trial and due process. (*Id.* at 5.)

***Count One.*** The allegedly unconstitutional conduct began at 2330 Palomira Court in Chula Vista and continued after Moreno and Menna brought Edwards to the South Bay Detention Center and the San Diego Central Jail. (*Id.* at 1.) "During arrest on December

25-cv-03825-AJB-DDL

31, 2023," Edwards claims Moreno and Menna confined him "in a WRAP device and locked [him] in their vehicle for an excessive amount of time." (*Id.* at 3.)

A WRAP is a "total body restraint in the style of a cocoon." *Garcia v. Yuba Cnty. Sheriff's Dep't*, 559 F. Supp. 3d 1122, 1125 (E.D. Cal. 2021). "Properly applied, it forces a person into a seated position with the legs straight in front and hands restrained behind the back." *Est. of Sanchez v. County of Stanislaus*, No. 1:18-cv-00977-ADA-BAM, 2023 U.S. Dist. LEXIS 203673, at *72 (E.D. Cal. Nov. 14, 2023) (cleaned up).

Between the three locations, Edwards alleges "[m]ultiple excessive force incidents happened for a total of 9 hours," during which time the "officers kept playing with buttons tightening and loosening the equipment to intentionally cause discomfort," "essentially torturing" him. (Doc. No. 1 at 3.)

As such, Count One asserts that Defendants Moreno and Menna violated Edwards' right to "freedom from cruel and unusual punishment," *i.e*, the Eight Amendment. (*Id.*)

***Count Two.*** Following his arrest, Edwards further alleges that Moreno and Menna violated the Fourth Amendment by allowing "a Random National City Police Officer to scan" Plaintiff's finger with a "portable scanner at the South Bay Detention Facility." (*Id.* at 4.)

***Count Three.*** Following arrest and booking by the CVPD, Edwards was later convicted at trial for robbery and burglary of the Enagic Golf Club in Chula Vista. In relation to his conviction, Edwards alleges that Menna, on an unspecified date, "stated false[ly]" in a police report that the golf club "has no cameras." (*Id.* at 5.) This, per Edwards, meant that "CVPD interfered with the investigation of his criminal case, "creating an unfair bias[,] withholding exculpatory evidence proving" Edwards' "innocence." (*Id.*)

## C.    Discussion

### 1.    Excessive Force (Count One) – Defendants Moreno and Menna

In Count One, Edwards alleges Moreno and Menna, both CVPD personnel, violated his Eighth Amendment rights on December 31, 2023, the same day they arrested him.

25-cv-03825-AJB-DDL

Generally, though, the Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "after conviction and sentence." *Graham*, 490 U.S. at 393 & n.6. It appears Edwards was either an arrestee or a pretrial detainee at the time of his asserted injury. The Supreme Court has stated that "excessive force during a[n] . . . arrest is 'analyzed under the Fourth Amendment.'" *Barnes v. Felix*, 605 U.S. 73, 79 (2025) (quoting *Graham*, 490 U. S. at 395). Pretrial detainees' "rights arise under the Due Process Clause of the Fourteenth Amendment"; they "are accorded no rights under the Eighth Amendment." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citations omitted).

Whether a pretrial excessive force claim arises under the Fourth[2] or Fourteenth[3] Amendment, a court's inquiry is the same. *Lombardo v. City of St. Louis*, 594 U.S. 464, 466 n.2 (2021) (per curiam) (internal citations and quotation marks omitted). "[A] pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

Liberally construed, Edwards' claim of being confined in a patrol car in a WRAP device for nine hours states a cognizable claim of excessive force. Since a WRAP device is arguably far more restrictive than tightly handcuffing Edwards, a nine-hour period of post-arrest confinement in such a device is sufficient to survive the minimum initial screening threshold. *See, e.g.*, *Buckley v. Evans*, No. 2:02-cv-01451-JKS, 2007 WL 2900173, at *8 (E.D. Cal. Sept. 28, 2007) (finding that tight handcuffing was more than *de minimis* force where prisoner was kept in handcuffs and leg irons for almost five hours and they were not loosened when he constantly complained).

---

[2]    The Fourth Amendment, in part, protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV.

[3]    The Fourteenth Amendment provides that the State shall not "deprive any person of life, liberty or property, without due process of the law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

To be sure, the excessive force inquiry involves "careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. While it is true that Edwards does not explain whether he posed any security risk to the officers or was actively resisting, taking his remaining allegations as true at this stage, his Complaint has alleged "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). Even absent any allegation that the initial deployment of the WRAP device was unreasonable, the claim as pleaded surpasses §§ 1915(e)(2) and 1915A(b)'s initial screening threshold when considering Edwards' additional allegations that defendants kept him in the device for a nine-hour period and "kept playing with buttons tightening and loosening the equipment to intentionally cause [him] discomfort." (Doc. No. 1 at 3.)

### 2. Excessive Force – Defendant CVPD

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities and other local government units qualify as "persons," and are therefore subject to lawsuits, under § 1983. The Ninth Circuit has held that police and sheriff departments in California can be subject to *Monell* liability under § 1983 when acting for a county or city. *Streit v. County of Los Angeles*, 236 F.3d 552, 565 (9th Cir. 2001) (Los Angeles County Sheriff's Department); *see also Shaw v. Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604–05 (9th Cir. 1986) (San Jose Police Department).

To establish *Monell* liability, a plaintiff must "prove '(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation.'" *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch.*

25-cv-03825-AJB-DDL

*Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432 (9th Cir. 1997)). A plaintiff can prove the existence of a policy or custom on any of three theories: (1) that the official acted pursuant to expressly adopted official policy; (2) that the official's conduct was a product of the local entity's deficient practices or customs, such as failing to train or supervise; or (3) that the official had "final policy-making authority" or "ratified a subordinate's unconstitutional decision or action and the basis for it." *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973–74 (9th Cir. 2021) (internal quotations omitted).

However, nothing in Edwards' Complaint plausibly suggests that Defendants Moreno and Menna, in allegedly using excessive force against him, acted pursuant to a City of Chula Vista or CVPD policy, custom, or practice that caused him injury. Nor has Edwards pointed to the police department's failure to train or supervise.

The Court therefore concludes Edwards fails to allege facts stating a claim against Defendant CVPD and dismisses with respect to the CVPD.

### 3. Counts Two and Three

A district court may dismiss a claim and "deny leave to amend when amendment would be futile." *Hartmann v. CDCR*, 707 F.3d 1114, 1130 (9th Cir. 2013). This Court does so with regard to Counts Two and Three.

In Count Two, Edwards alleges that Defendants violated the Fourth Amendment when they allowed a National City Police Officer to scan" his "finger . . . at the South Bay Detention Facility." (Doc. No. 1 at 4.)

This allegation, on its face, fails to state a claim. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. While it is true that an "arrest without probable cause violates the Fourth Amendment and gives rise to a claim for damages under § 1983," *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008), Edwards has not alleged that his arrest and pretrial detention took place in the absence of probable cause.

25-cv-03825-AJB-DDL

Since Edwards does not challenge the legality of the arrest or his initial detention, he cannot make out a plausible claim of Fourth Amendment violation. For it is well-established that "[w]hen officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, . . . fingerprinting [is] . . . a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Maryland v. King*, 569 U.S. 435, 466 (2013). As the Supreme Court observed in *King*, since the advent of fingerprinting, courts "have had no trouble determining that fingerprinting was a natural part of 'the administrative steps incident to arrest.'" 569 U.S. at 458 (quoting *County of Riverside v. McLaughlin*, 500 U.S. 44, 58 (1991)). Indeed, by 1932, it had already been observed that "routine fingerprinting did not violate the Fourth Amendment precisely because it fit within the accepted means of processing an arrestee into custody." *Id.*

Therefore, Edwards fails to state a plausible Fourth Amendment violation simply by pointing to the scanning of his fingerprint by a National City Police Department officer at the South Bay Detention Facility. The Court notes that Edwards seems to imply the scan was done to further some unrelated investigative motive, (Doc. No. 1 at 4) (stating the fingerprint-scanning officer was able to "obtain Edwards' personal information"), yet the Supreme Court in *King* pointed out that the routine making of comparisons between an "arrestee's fingerprints against electronic databases of known criminals and unsolved crimes" raises no Fourth Amendment implications. *Id.* at 451. Given the breadth of permissible general uses of fingerprint data taken during arrest or booking, and Edwards' failure to allege any discernible expectation of privacy with respect to his fingerprint scan by a law enforcement agent from an adjacent city's police department, Count Two is dismissed.

Finally, in Count Three, Edwards' claim of interference with his rights at trial is barred by the rule established in *Heck v. Humphrey*, 512 U.S. 477, 483–87 (1994). *Heck* states that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a

25-cv-03825-AJB-DDL

conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. 477, 486–87 (footnote omitted). As such, whenever any "claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id.* at 487. *Heck*, therefore, instructs courts to "consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

Edwards' claim directly implicates the validity of his conviction as he alleges that Menna's conduct interfered with an investigation that would have unearthed "evidence proving [his] innocence." (Doc. No. 1 at 5.) Not only does Edwards not plead facts indicating a "favorable termination" of a challenge to his conviction for underlying robbery, Edwards' habeas petition under 28 U.S.C. § 2254 is pending in this District. *See Edwards v. CDCR, et al.*, No. 26-cv-01245-BJC-VET (S.D. Cal. filed Feb. 17, 2026).

Thus, Edwards does not allege and cannot show the conviction which forms the basis of his Count Three claim has already been invalidated, the Court finds this claim fails to state a plausible claim for relief under § 1983 and warrants *sua sponte* dismissal without leave to amend pursuant to 28 U.S.C. § 1915A(b)(1). *See Heck*, 512 U.S. at 486–87.

Accordingly, Counts Two and Three are **DISMISSED** without leave to amend, since it is "absolutely clear that the deficiencies" with respect to these claims therein "could not be cured by amendment." *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (internal quote marks omitted).

## III.   Conclusion and Orders

For the reasons explained, the Court:

1.      **GRANTS** Edwards Motion to Proceed IFP. (Doc. No. 2.)

10

25-cv-03825-AJB-DDL

2.      **DIRECTS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee owed in this case and forward monthly payments from Edwards' account to the Clerk of the Court as required by 28 U.S.C. § 1915(b)(2).

3.      **DIRECTS** the Clerk of the Court to serve a copy of this Order by U.S. Mail on Jeff Macomber, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

4.      **DISMISSES** all claims against Defendant Chula Vista Police Department based on Edwards' failure to state a plausible claim for relief against the department pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

5.      **GRANTS** Edwards forty-five (45) days' leave from the date of this Order in which to either: (A) file a Notice of Intent to Proceed with his excessive force claims against Moreno and Menna only; *or* (B) file an Amended Complaint that corrects the deficiencies of pleading identified in this Order. If Plaintiff files a Notice of Intent to proceed against Moreno and Menna only, he may include a request that the U.S. Marshal effect service of summons and his original Complaint on Moreno and Menna pursuant to 28 U.S.C. § 1915(d) and Federal Rule Civil Procedure 4(c)(3).

If Edwards instead chooses to amend, his new pleading must be clearly titled as his Amended Complaint, contain S.D. Cal. Civil Case No. 25-cv-3825-AJB-DDL in its caption, and be complete in itself without reference to his original Complaint. Defendants not named and any claim not realleged in Plaintiff's Amended Complaint, *including the currently sufficient excessive force claim alleged against Moreno and Menna in his original Complaint*, will be considered waived. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not realleged in an amended pleading may be "considered waived if not repled").

If Edwards fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Edwards 's failure to state

25-cv-03825-AJB-DDL

a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED**.

Dated:  May 7, 2026

Hon. Anthony J. Battaglia
United States District Judge

25-cv-03825-AJB-DDL